IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MAIKOL ALEXANDER MANTILLA MARCANO and DERWIS ALEXANDER MANTILLA GUILLERMO | : : : : : | CIVIL ACTION<br><br>No. 26-239 |
| v. | : : | |
| JAMAL L. JAMISON, *Warden of Philadelphia Federal Detention Center*, and MICHAEL ROSE, *Field Office Director of Enforcement and Removal Operations, Philadelphia Office* | : : : : : : | |

## MEMORANDUM

**Judge Juan R. Sánchez**                                                       **January 26, 2026**

      Petitioners, a father and son from Venezuela, seek habeas relief under 28 U.S.C. § 2241 after U.S. Immigration and Customs Enforcement (ICE) took them into custody at a scheduled check-in on January 9, 2026. Petitioners allege they had previously been granted humanitarian parole under 8 U.S.C. § 1182(d)(5)(A) while pursuing asylum, and ICE terminated that parole without notice or any individualized determination. The Government asserts parole termination is discretionary and unreviewable. According to the Government, once Petitioners' parole ended, they reverted to "arriving alien" status and became subject to mandatory detention under 8 U.S.C. § 1225(b)(2). Because the Government did not terminate Petitioners' parole in the manner required by law and because § 1225(b)(2) does not apply, Petitioners' petition will be granted.

## BACKGROUND

      Petitioners Maikol Alexander Mantilla Marcano and Derwis Alexander Mantilla Guillermo are citizens of Venezuela. Pet. ¶¶ 16-17, Dkt. No. 1. On December 2, 2024, Petitioners presented themselves to U.S. Customs and Border Protection (CBP) at the Calexico, California port of entry

and expressed an intent to seek asylum. *Id*. ¶ 2. Petitioners allege CBP interviewed them and, based on individualized circumstances, granted them humanitarian parole under 8 U.S.C. § 1182(d)(5)(A). *Id*. ¶ 3. They were issued I-94s and Notices to Appear (NTA) in removal proceedings and were required to check in with ICE at regular intervals. *Id*.

Petitioners submitted timely asylum applications, attended immigration court hearings, and complied with ICE check-ins. *Id*. ¶¶ 4-7. Petitioner Derwis obtained his work authorization and a social security card, and Petitioner Maikol attended high school. *Id*. ¶ 4. They allege their merits hearing is scheduled for October 2026. *Id*.

On January 9, 2026, Petitioners appeared for a scheduled ICE check-in in Philadelphia. ICE arrested them at the check-in. Petitioners allege their arrest was essentially ICE "revoking their parole" without "meaningful notice, explanation, or rationale." *Id*. ¶¶ 5-6. The Government confirms Petitioners' "parole into the United States was revoked," and, as a result, Petitioners "are subject to mandatory detention under 8 U.S.C. § 1225(b)." Gov't Opp'n 1, Dkt. No. 3. Petitioners are currently detained at the Philadelphia Federal Detention Center (FDC). Pet. ¶ 1. Petitioners filed a petition for writ of habeas corpus under 28 U.S.C. § 2241(c)(3) on January 14, 2026.

**JURISDICTION**

Federal district courts have habeas jurisdiction over § 2241 petitions that raise constitutional challenges to detention. *Demore v. Kim*, 538 U.S. 510, 522-23 (2003); *Khalil v. President, United States of Am.*, No. 25-2162, 2026 WL 111933, at *8 (3d Cir. Jan. 15, 2026) (finding the district court "correctly held that it had habeas jurisdiction over [the petitioner's] petition"); *see also I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001) ("At its historical core, the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest."). The Government, however, argues this

Court lacks subject-matter jurisdiction under 8 U.S.C. § 1252(g), § 1252(b)(9), and § 1252(a)(2)(B)(ii). Gov't Opp'n 4. Petitioners argue § 1252(g) is narrow, § 1252(b)(9) does not sweep in collateral detention claims, and § 1252(a)(2)(B)(ii) does not apply here. Pet'rs' Reply 8-12, Dkt. No. 4. The Court agrees with Petitioners that it has subject-matter jurisdiction.

First, Petitioners seek core habeas relief from present custody, not a review of a final order of removal. Section 1252(g) states, "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to (1) commence proceedings, (2) adjudicate cases, or (3) execute removal orders against any alien under this chapter." The Third Circuit has cautioned this bar "does not sweep broadly. It reaches only these three specific actions, not everything that arises out of them." *Tazu v. Att'y Gen. U.S.*, 975 F.3d 292, 296 (3d Cir. 2020) (citing *Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018)); *see also Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999) ("It is implausible that the mention of three discrete events along the road to deportation was a shorthand way of referring to all claims arising from deportation proceedings."). Because Petitioners are challenging the legality of their present detention and not the commencement of removal proceedings against them, § 1252(g) does not bar their claims.

Second, § 1252(b)(9) is not construed as a bar on all claims touching removal. It states, "[j]udicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section." U.S.C. § 1252(b)(9). The Supreme Court has treated detention related claims as potentially collateral rather than necessarily channeled to petitions for review. *Jennings*, 583 U.S. at 294-95 (2018) (plurality opinion). The Third Circuit recently

3

distinguished between detention-specific claims, which are collateral to petitions for review, and detention claims which are "inextricably linked" to removal and must be channeled to petitions for review under § 1252(b)(9). *Khalil*, 2026 WL 111933, at \*8-9; *see also Kourouma v. Jamison*, No. 26-0182, 2026 WL 120208, at \*3 (E.D. Pa. Jan. 15, 2026) (finding a petitioner's challenge to the government's authority to detain him under a particular detention statute is not "'inextricably linked' to his removal proceedings"). Here, Petitioners' narrow claim is that the Government lacks lawful authority to treat their parole as terminated and to detain them on that basis absent compliance with the Government's own regulations governing termination of parole. This is a claim about the legality of their detention, not a request to review the merits of a removal proceeding. Therefore, § 1252(b)(9) does not bar the Court's review.

Third, the Government argues § 1252(a)(2)(B)(ii) strips the Court of jurisdiction because parole termination is a discretionary decision under the Immigration and Nationality Act (INA).[1] Even assuming that parole termination involves a discretionary decision and that courts may not second-guess the Department of Homeland Security (DHS) Secretary's policy judgment, Petitioners' narrow claim challenges the Government's failure to comply with legal preconditions to end parole and restore Petitioners to a detention-eligible status. In other words, Petitioners do not challenge the Government's ability to terminate their parole. Instead, they challenge *how* the Government terminated Petitioners' parole. The Court can enforce the parole termination rule's procedural requirement without dictating whether parole should or should not be terminated as a matter of discretion. Section 1252(a)(2)(B)(ii), therefore, does not strip the Court of subject-matter jurisdiction.

---

[1] The Court takes no position on whether parole termination under § 1182(d)(5)(A) is a "discretionary decision."

**DISCUSSION**

Petitioners argue the Government failed to follow written notice and predicate grounds requirements to terminate their parole. Pet'rs' Reply 14-16. Due process requires fair, non-arbitrary procedure before the Government deprives a person of liberty. *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). When an agency promulgates binding regulations that condition when and how it may act, the agency must follow those rules. *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 265-67 (1954); *Leslie v. Att'y Gen. of U.S.*, 611 F.3d 171 (3d Cir. 2010) ("[R]ules promulgated by a federal agency that regulate the rights and interests of others are controlling upon the agency."). Even where an agency acts in an area of discretion, it must adhere to regulations. *See Service v. Dulles*, 354 U.S. 363, 382-87 (1957). An action taken in disregard of mandatory regulatory prerequisites is unlawful and fundamentally unfair. *Vitarelli v. Seaton*, 359 U.S. 535, 540-45 (1959) (finding the government's action to be illegal where procedure "fell substantially short of the requirements of the applicable departmental regulations").

Parole may be granted "only on a case-by-case basis for urgent humanitarian reasons or significant public benefit." 8 U.S.C. § 1182(d)(5)(A). It can be terminated "when the purposes of such parole, in the opinion of the Secretary of Homeland Security, have been served." *Id*. Termination of parole is governed by 8 C.F.R. § 212.5(e). Under that regulation, parole may be terminated "upon accomplishment of the purpose for which parole was authorized or when in the opinion of one of the [specified officials], neither humanitarian nor public benefit warrants the continued presence of the alien in the United States." 8 C.F.R. § 212.5(e)(2)(i). In such cases, "parole shall be terminated upon written notice to the alien and he or she shall be restored to the status that he or she had at the time of parole." *Id*.

5

The record does not show parole was terminated by "written notice" as required by § 212.5(e)(2)(i). Petitioners allege they were detained at a check-in and had their liberty "stripped . . . without meaningful notice, explanation, or rationale." Pet. ¶ 6. The Government does not identify a written notice of termination served on Petitioners, as the regulation requires. Nor does it provide the alleged notice in the record to the Court. Because § 212.5(e)(2)(i) states parole "shall be terminated upon written notice," the absence of such evidence is not a technical defect. Rather, it goes to whether parole was lawfully terminated at all. On this record, the Court cannot conclude the Government satisfied the written notice precondition to lawful termination.

The regulation also limits parole termination to specific circumstances: completion of parole's purpose or an authorized official's opinion that humanitarian or public benefit grounds no longer warrant continued presence. Petitioners contend there is no indication an authorized official made a determination specific to them that either the parole purpose had been accomplished or humanitarian/public benefit grounds no longer applied. The Government argues broadly that parole "ended" but it does not identify what official authorized termination or which termination ground was invoked under the regulation. Gov't Opp'n 1. At the habeas stage, where the Government justifies present custody of Petitioners by asserting parole termination, the absence of the written notice and the required predicate determination is consequential. Those requirements are the regulatory mechanisms by which parole is terminated and the parolee is restored to prior status. On this record, the Government has not shown lawful termination consistent with § 212.5(e)(2)(i).[2]

---

[2] The *Accardi* doctrine reinforces the Court's conclusion. Here, the doctrine applies with particular force where the regulation expressly protects against erroneous deprivation of liberty by requiring a formal, written termination step before restoring a person to a more restrictive status. *See Morton v. Ruiz,* 415 U.S. 199, 235 (1974) ("Where the rights of individuals are affected, it is incumbent upon agencies to follow their own procedures.").

6

Even assuming the Government lawfully terminated Petitioners' parole under § 212.5(e)(2)(i), 8 U.S.C. § 1225(b)(2) does not apply to Petitioners. Section 1225(b)(2)(A) is triggered only in a particular procedural posture: "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a." This language presupposes an "examining immigration officer" making a determination in the context of examining an alien "seeking admission," not an interior arrest long after parole has permitted physical entry. This legal question has been considered by numerous courts in the wake of the Board of Immigration Appeals' (BIA) decision in *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025). All courts in this district that have considered the issue, including this Court in *Ndiaye v. Jamison*, No. CV 25-6007, 2025 WL 3229307 (E.D. Pa. Nov. 19, 2025), have rejected the Government's position. *See, e.g.*, *Patel v. McShane*, No. 25-5975, 2025 WL 3241212 (E.D. Pa. Nov. 20, 2025); *Rios Porras v. O'Neill*, No. 25-6801, 2025 WL 3708900 (E.D. Pa. Dec. 22, 2025); *Demirel v. Fed. Det. Ctr. Phila.*, No. 25-5488, 2025 WL 3218243 (E.D. Pa. Nov. 18, 2025); *Kashranov v. Jamison*, No. 25-05555, 2025 WL 3188399 (E.D. Pa. Nov. 14, 2025); *see also Barco Mercado v. Francis*, No. 25-6582, 2025 WL 3295903, at *4 (S.D.N.Y. Nov. 26, 2025) (noting that as of November 26, 2025, "[t]he challengers have prevailed, either on a preliminary or final basis, in 350 of those cases decided by over 160 different judges sitting in about fifty different courts spread across the United States"); *cf. Castanon-Nava v. U.S. Dep't of Homeland Sec.*, 161 F.4th 1048, 1060-61 (7th Cir. 2025) (finding the government was "not likely to succeed on the merits of their argument" that § 1225(b)(2) applies to noncitizens who have been present in the country).

Petitioners were physically present in the United States for more than a year before ICE took them into custody pursuant to § 1225(b)(2)'s mandatory detention scheme. As this Court has previously explained § 1226(a), not § 1225(b)(2), "applies to noncitizens . . . who have been residing in the country." *Ndiaye*, 2025 WL 3229307, at *8. The Government's detention of Petitioners is therefore illegal.

**CONCLUSION**

Because the Government has not demonstrated lawful parole termination consistent with § 212.5(e)(2)(i) and because § 1225(b)(2) does not apply to long-present noncitizens, Petitioners' present detention is illegal. The Court will therefore grant Petitioners' petition for writ of habeas corpus.

An appropriate Order follows.

BY THE COURT:

/s/ Juan R. Sánchez
Juan R. Sánchez, J.